IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDWARD P. LUCAS,                                    6:13-cv-01178-MA

               Plaintiff,                  OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

             Defendant.

ALAN STUART GRAF
208 Pine Street
Floyd, Virginia 24091

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

ERIN F. HIGHLAND
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Edward P. Lucas, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed the instant applications for DIB and SSI on January 23, 2009, alleging disability due to carpal tunnel syndrome, degenerative disc disease, neuropathy, fibromyalgia, "[b]ulging or compressed discs," human immunodeficiency virus (HIV), depression, post-traumatic stress disorder (PTSD), irritable bowel syndrome (IBS), and attention deficit disorder (ADHD). Tr. 233. His applications were denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on August 10, 2011, at which Plaintiff was represented by counsel and testified.

On September 2, 2011, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. After the Appeals Council considered additional evidence and declined review

of the ALJ's decision, Plaintiff timely filed a Complaint in this Court.  Tr. 1-3.

## FACTUAL BACKGROUND

Born on May 18, 1965, Plaintiff was 37 years old on the alleged onset date of disability and 46 years old on the date of the hearing.  Plaintiff has a high school equivalency and past relevant work as a Cashier, Gas Station Attendant, Gas Station Assistant Manager, and Baker.  Tr. 24, 45.

Plaintiff alleges his conditions became disabling on April 1, 2003.  Tr. 233.  Plaintiff testified about his conditions and functional limitations at the hearing and submitted two Adult Function Reports – one in relation to the present application and the other in relation to a 2005 disability application not directly at issue in this case.  Tr. 38-49, 198-205, 260-67.

On June 19, 2006, Kurt Brewster, M.D., examined Plaintiff and submitted an opinion as to Plaintiff's physical limitations.  Tr. 602-12.  Robert Pelz, M.D., Ph.D.; Robert H. K. Choi, M.D., Ph.D.; and Paul G. Curtin, M.D., each submitted forms and letters to Plaintiff's community college concerning his functional limitations as they related to educational accommodations.  Tr. 690-91, 692-93, 694-95, 933.  Zak Schwartz, Ph.D., one of Plaintiff's treating psychological providers, submitted a February 20, 2009, opinion as to Plaintiff's mental conditions and functional limitations.  Tr. 785-87.  The record also contains a report from Carmina Angeles,

M.D., Ph.D, who evaluated Plaintiff for purposes of medical treatment of Plaintiff's neck and mid-back pain.  Tr. 1172-75. Finally, Tara R. Workman, M.D., wrote a letter dated February 9, 2012, which was first submitted to the Appeals Council, concerning Plaintiff's physical conditions.  Tr. 1181.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Each step is potentially dispositive.  The claimant bears the burden of proof at Steps One through Four.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform.  See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, April 1, 2003.  See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 13.

At Step Two the ALJ found Plaintiff's degenerative disc disease; fibromyalgia; history of bilateral carpal tunnel syndrome, status post bilateral release surgery; history of left meniscal tear, status post arthroscopy; HIV-positive with mild neuropathy;

4 - OPINION AND ORDER

obesity; depression; PTSD; ADHD; and history of methamphetamine use were severe impairments. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 13-14.

At Step Three the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 15-16.

The ALJ found Plaintiff has the residual functional capacity (RFC) to perform a range of light work except that Plaintiff can frequently balance and climb stairs and ramps. The ALJ found Plaintiff could perform all other postural activities occasionally, but should avoid exposure to vibration and hazards. The ALJ further limited Plaintiff to entry-level work consisting of simple one- to two-step instructions and only occasional contact with the general public. Tr. 16-24.

At Step Four the ALJ found Plaintiff is unable to perform all of his past relevant work. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 24.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including Laundry Sorter and Cleaner/Polisher. Tr. 25. In the alternative, the ALJ also found that if a limitation to "occasional use of the hands and arms for reaching, fingering, and handling were added" to the RFC, Plaintiff would be able to perform

the occupations of Bakery Helper and Blending Tank Tender Helper. Tr. 25.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises two primary issues on appeal. First, Plaintiff argues the ALJ improperly rejected Plaintff's testimony. Second, Plaintiff maintains the ALJ erroneously discredited the opinions of Drs. Pelz, Choi, Curtin, Schwartz, Angeles, and Workman.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The Court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner

must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.   Plaintiff's Testimony

Plaintiff first argues the ALJ improperly rejected his testimony.   In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.   20 C.F.R. § 404.1529.   First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.   Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).   Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear, and convincing reasons for doing so.   Id. at 1281.   The ALJ's reasons for rejecting a claimant's testimony must be supported by substantial evidence in the record.   See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

If an ALJ finds the claimant's testimony regarding his subjective symptoms unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).   In doing so, the ALJ must identify which testimony is credible and which testimony undermines the claimant's

complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).  The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

### A.    Plaintiff's Testimony

At the hearing, Plaintiff testified he was primarily disabled by back and neck pain, and that he cannot use his hands or wrists on account of swelling.  Tr. 39.  As to his hand limitations, Plaintiff told the ALJ that his hands "are not usable," and that he had been suffering from such limitations "for a long time."  Tr. 51-52.  Plaintiff testified his hand and wrist symptoms eased somewhat after two surgeries, but that severe symptoms returned within six months of the second surgery.  Tr. 55-56.  Plaintiff additionally reported that he cannot lift his hands above his head without his arms going numb.  Tr. 52.

Plaintiff testified that he also has ADHD, but that Adderall helps him stay focused during school.  Tr. 48.  Although Plaintiff reported the Adderall helps with his attention span, he also reported headaches and memory problems.  Tr. 53-54.

As to his daily activities, Plaintiff reported that he takes the bus to the grocery store, which is about a mile away, but that he cannot walk to the store because of knee and ankle problems.

Tr. 43.   Plaintiff testified that he takes classes two days per week at Lane Community College, but that he can only take one class per quarter on account of his functional limitations.   Tr. 44-46.

In an Adult Function Report dated February 21, 2009, Plaintiff reported he wakes around 6:00 a.m., takes his medications, and eats breakfast.   Tr. 260.   Plaintiff reported he showers on days when he is not too sore to do so, then gets dressed and leaves for school. Tr. 260.   Plaintiff wrote he receives various accommodations at school, including additional time on assignments and tests, assistance with note-taking, and late arrival and early departure privileges.   Tr. 268.   After school, Plaintiff reported he visits his partner, son, and dog; watches television; rests; and goes to the dog park.   Tr. 268.   After dinner, Plaintiff plays cards or board games before returning home for homework, reading, or television.   Tr. 268.

As to his ability to care for himself, Plaintiff noted he sometimes requires help with his shoes, maintains short hair for ease of care, and shaves once or twice per week.   Tr. 261. Plaintiff reported he cooks simple meals daily, performs a range of housework including vacuuming, dusting, washing dishes, and wiping down counters for approximately 30 minutes once or twice per week. Tr. 262.   Plaintiff wrote that he goes outside daily and shops for groceries for 45 minutes twice per month.   Tr. 263.   As to hobbies and social activities, Plaintiff noted he goes to school, reads,

watches television and movies, listens to audio books, visits with family, and attends alcohol-treatment meetings. Tr. 264. Plaintiff reported, however, that his social circle is much smaller than it used to be and he cannot partake in physical activity he previously enjoyed. Tr. 264-65.

With regard to his functional limitations, Plaintiff reported his conditions affect his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. Tr. 265. Plaintiff reported he can only walk two or three blocks before requiring "a few minutes" of rest; cannot lift "more than a few pounds, and not repetitively;" cannot stand for more than 15 to 30 minutes without pain or numbness; and cannot sit continuously for more than 30 minutes. Tr. 265, 269. As to his memory limitations, Plaintiff reported he must re-read written instructions "several times" and frequently needs oral instructions repeated to him. Tr. 265. Plaintiff reported that stress causes depression and he has difficulty dealing with authority figures, especially police. Tr. 266.

In an Adult Function Report submitted for a prior application and dated February 28, 2005, Plaintiff reported largely similar activities of daily living including watching television and visiting his partner and son. Tr. 198. At that time, Plaintiff checked that his conditions affected his abilities to lift, squat,

bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, use his hands, and get along with others. Tr. 203. Plaintiff reported he could only walk one block before requiring three to six minutes of rest. Tr. 203.

**B.    ALJ's Reasons for Rejecting Plaintiff's Testimony**

The ALJ rejected Plaintiff's testimony because clinical findings and objective medical evidence were inconsistent with Plaintiff's allegations and Plaintiff's activities of daily living as reported throughout the record were inconsistent with his allegations of disabling conditions. Tr. 17-19. I conclude these reasons, taken together, constitute clear and convincing reasons to reject Plaintiff's allegations of disabling conditions.

**1.    Clinical Findings Inconsistent with Allegations**

The ALJ cited many instances in which Plaintiff's allegations were not consistent with medical providers' clinical findings. As noted, Plaintiff testified that his hand and wrist conditions were one of his primary disabling conditions and caused very significant functional limitations. The ALJ noted, however, that Plaintiff frequently demonstrated no sensory deficits and normal grip strength. E.g. Tr. 381, 610, 1032, 1174. On exam in June of 2006, as the ALJ noted, Dr. Brewster "did not find signs for ongoing carpal tunnel syndrome." Tr. 612. An October 19, 2010, nerve conduction study indicated "a very mild right carpal tunnel syndrome in normal circumstances," which in light of Plaintiff's

history of two carpal tunnel surgeries on each wrist "could really just reflect residual changes from the prior carpal tunnel syndromes." Tr. 1045.

As to Plaintiff's back and neck pain, the ALJ noted that Plaintiff reported that medication and physical therapy had been very helpful in controlling his pain. Tr. 1147, 1187. Imaging of Plaintiff's back and neck consistently revealed mild or minimal findings. Tr. 341, 498, 882, 883, 888, 1113. Similarly, findings concerning Plaintiff's neuropathy were frequently mild. Tr. 339, 855, 877, 881, 887, 1187.

The ALJ also properly noted that clinical records indicated Plaintiff's mental impairments improved with medication and methamphetamine cessation. Indeed, on November 17, 2005, Plaintiff noted his mental health symptoms appeared to be improving since he had been "off the amphetamines for a month." Tr. 412. Even as of January of that year, Plaintiff had reported he had "been doing well enough" without resuming Prozac. Tr. 423. More recently, after a diagnosis with ADHD, mental health providers noted Plaintiff's Adderall was helping him work on his GED. Tr. 719. Thereafter, Plaintiff consistently demonstrated significantly improved symptoms on Adderall. Tr. 690, 694, 954. Finally, the ALJ reasonably noted that Plaintiff did not demonstrate memory deficits on exam commensurate with his allegations. Tr. 653, 1173.

In sum, the ALJ appropriately noted that Plaintiff's allegations of disabling conditions were inconsistent with clinical findings throughout the record. This is a compelling reason, supported by substantial evidence, to reject Plaintiff's testimony.

### 2. Inconsistency with Reported Activities of Daily Living

The ALJ also rejected Plaintiff's testimony because his allegations of disabling conditions were contradicted by Plaintiff's reports of his daily activities. Indeed, there are several reports of daily activities throughout the record that the ALJ could reasonably find are inconsistent with Plaintiff's allegations.

On August 23, 2006, Plaintiff reported that he "dropped a transmission on his right foot." Tr. 923. On January 17, 2005, Plaintiff reported he "was moving furniture boxes around." Tr. 423. On March 19, 2004, Plaintiff reported working on his car. Tr. 550. On August 19, 2008, Plaintiff reported "[h]e spent the weekend hunched over books and scribbling out a term paper." Tr. 865. On April 29, 2009, Plaintiff reported doing "several hours of raking." Tr. 938. Finally, on March 23, 2011, Plaintiff reported "running on an elliptical machine at [the] gym" for at least 15 minutes. Tr. 1172. Each of these reports of activities of daily living are inconsistent with aspects of Plaintiff's reports of very limited functional capabilities in his Adult Function Reports and at the hearing. While Plaintiff reported many of these activities

caused pain, the ALJ could reasonably find that Plaintiff's ability to complete these tasks was inconsistent with his alleged limitations.

Accordingly, the ALJ properly cited inconsistency between Plaintiff's allegations and his reported daily activities as a reason to reject Plaintiff's testimony. Plaintiff's reported activities of daily living, then, are another compelling reason, supported by substantial evidence, for the ALJ's adverse credibility determination. In sum, I conclude the ALJ cited clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's testimony of disabling conditions and functional limitations.

## II.  **Medical Testimony**

Plaintiff next argues the ALJ erroneously rejected the opinions of Drs. Pelz, Choi, Curtin, Schwartz, Angeles, and Workman. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

findings.'" <u>Chaudhry v. Astrue</u>, 688 F.3d 661, 671 (9th Cir. 2012) (quoting <u>Bray v. Comm'r Soc. Sec. Admin.</u>, 554 F.3d 1219, 1228 (9th Cir. 2009)).

"'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" <u>Id.</u> (quoting <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. <u>See Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." <u>Id.</u>

**A.    Drs. Pelz, Choi, and Curtin**

The record contains statements from Drs. Pelz, Choi, and Curtin submitted to Lane Community College for purposes of establishing classroom accommodations.[1] Tr. 690-91, 692-93, 694-95, 933. All three providers were treating sources.

Dr. Pelz listed Plaintiff's diagnoses as "ADHD, HIV, fibromyalgia[,] chronic pain, [and] carpal tunnel." Tr. 690. Dr. Pelz noted that Plaintiff's HIV was "[a]symptomatic," and that his ADHD was "[b]etter on Adderall," but that Plaintiff still had

---

[1] The record contains an additional record from Dr. Pelz arguably meeting the criteria for being considered medical testimony. Tr. 1103. Plaintiff, however, does not argue the ALJ erroneously rejected this opinion.

memory problems and "distractibility." Tr. 690. In response to whether Plaintiff's disabilities substantially affected any major life activities, Dr. Pelz wrote "yes – learning." Tr. 691. Dr. Pelz circled that Plaintiff's conditions affected his concentration, multi-tasking, and processing speed. Tr. 691. Accordingly, Dr. Pelz opined Plaintiff would require "extra time to complete work." Tr. 691.

Dr. Choi listed "neck pain, low back pain, [and] peripheral neuropathy" as Plaintiff's diagnoses. Tr. 692. Dr. Choi listed Plaintiff's onset date as January 29, 2008, and circled that Plaintiff's conditions affect major life activities without further specification. Tr. 693. Dr. Choi circled that Plaintiff's conditions cause chronic pain, fatigue, and weakness, and affect his endurance and flexibility. Tr. 693. Dr. Choi, however, did not recommend any accommodations. Tr. 693.

Dr. Curtin listed Plaintiff's diagnoses as HIV, carpal tunnel, fibromyalgia, neuropathy, and ADHD. Tr. 694. Dr. Curtin noted that Plaintiff's HIV was asymptomatic and his ADHD was "improved with [medication]." Tr. 694. Dr. Curtin circled that Plaintiff's conditions affect his abilities to learn as well as his concentration, multi-tasking, and processing speed, and cause him chronic pain and weakness. Tr. 695. Accordingly, Dr. Curtin recommended that Plaintiff receive "[e]xtra time" and the "[a]bility to change positions." Tr. 695.

The record contains an additional letter from Dr. Curtin submitted in relation to school accommodations. Tr. 933. In that letter, Dr. Curtin noted Plaintiff's diagnosis of ADHD and recommended Plaintiff be given "additional/prolonged time for completion of his testing." Tr. 933. Dr. Curtin estimated that Plaintiff would require double the typical time for testing. Tr. 933. Finally, Dr. Curtin noted Plaintiff would also require additional time on account of his carpal tunnel syndrome, which would require Plaintiff to "take breaks from his penmanship." Tr. 933.

The ALJ gave these opinions some, but not great weight, because educational accommodations do not directly correlate to possible vocational limitations, the record indicates Plaintiff's carpal tunnel and ADHD improved with treatment, and the accommodations were inconsistent with Plaintiff's activities of daily living. Tr. 21. To the extent they were inconsistent with the RFC, these opinions were contradicted by, among other opinions, Dr. Brewster's examining opinion and the reviewing opinion of Joshua J. Boyd, Psy.D. Tr. 602-12, 831-33. Thus, the ALJ was required to cite specific and legitimate reasons to reject the school-accommodation opinions. I conclude the ALJ did so.

The ALJ is correct that academic accommodations do not, in many circumstances, easily translate to workplace limitations. In this instance, this is particularly true with the accommodations

for extra time with assignments and testing, as workplace activities are inherently different from educational assignments and tests. Notably, the RFC contains a very significant limitation of Plaintiff to "entry-level work consisting of simple, 1- to 2-step instructions." Tr. 16. Especially in light of the differences between academic accommodations and workplace limitations cited by the ALJ, this limitation is reasonably consistent with the medical testimony. See Stubbs-Danielson, 539 F.3d at 1174.

As discussed above, the ALJ also reasonably noted that Plaintiff's carpal tunnel syndrome and ADHD improved after surgery and medication, respectively. Finally, Dr. Curtin's note that Plaintiff required an accommodation to permit him to change positions is inconsistent with Plaintiff's reports of activities of daily living, including Plaintiff's report that he spent a "weekend hunched over books and scribbling out a term paper." Tr. 865. The ALJ properly noted that the school-accommodation opinions were inconsistent with Plaintiff's activities of daily living. I conclude these reasons, taken together, constitute specific and legitimate reasons to reject the opinions of Drs. Pelz, Choi, and Curtin.

**B.   Dr. Schwartz**

Plaintiff next argues the ALJ erred in rejecting Dr. Schwartz's opinion. Dr. Schwartz noted that Plaintiff demonstrated

"agitated depression," impulsivity, and "angry acting out."  Tr. 785.  Dr. Schwartz noted that Plaintiff had significantly improved his impulse control and relationship skills.  Tr. 786.  Dr. Schwartz reported that Plaintiff's activities of daily living vary greatly based on Plaintiff's mood and symptoms, but were "usually adequate."  Tr. 786.  As to social functioning, Dr. Schwartz opined Plaintiff had "[l]imited ability" and was "inconsistent."  Tr. 786.  With respect to Plaintiff's concentration, persistence, and pace abilities, Dr. Schwartz opined Plaintiff has "some function" unless triggered.  Tr. 787.  Dr. Schwartz also opined, however, that Plaintiff has a "[h]istory of inability to adjust to work [and] home stressors over time such that cont[inued] employment [is] not feasible."  Tr. 787.  Although Dr. Schwartz completed the report on February 20, 2009, his last clinical encounter with Plaintiff was January 31, 2008.  Tr. 787.

The ALJ rejected Dr. Schwartz's opinion because he gave no specific vocational limitations, more than one year had elapsed between the time Dr. Schwartz last saw Plaintiff and when he submitted his opinion, Plaintiff showed significant improvement on Adderall, and Dr. Schwartz's opinion was inconsistent with Plaintiff's daily activities.  Tr. 22.  Dr. Schwartz's opinion was contradicted by the opinion of Dr. Boyd in which he assigned minimal limitations in social functioning.  Tr. 830-32.  Thus, the

ALJ was required to cite specific and legitimate reasons to reject Dr. Schwartz's opinion. I conclude the ALJ did so.

The ALJ's rejection of Dr. Schwartz's opinion because of the gap between treatment and submission of the opinion and Plaintiff's improvement on Adderall is particularly convincing. Indeed, on October 20, 2008, after Dr. Schwartz finished treating Plaintiff but a few months before Dr. Schwartz's opinion, Dr. Pelz noted Plaintiff "made numerous important gains over the last year or so" and that Plaintiff's functionality "improved significantly" on Adderall. Tr. 954. Thus, the year between Dr. Schwartz's last clinical encounter with Plaintiff and the date of the opinion appears to have been particularly significant and provides a convincing reason to reject Dr. Schwartz's opinion.

The ALJ was also correct that Plaintiff's reported activities of daily living were inconsistent with Plaintiff's activities of daily living. Indeed, in Plaintiff's Adult Function Report, he reported significant social interaction with his family. Tr. 260-68. While there are references in the record to difficulties in Plaintiff's relationship with his partner, those references become sparse after Plaintiff's cessation of methamphetamine. Otherwise, the ALJ could reasonably find that Plaintiff's activities of daily living, including daily contact with local family, traveling to California to visit his son, and attending school multiple days per week, indicate Plaintiff was capable of somewhat limited social

functioning as provided in the RFC. Tr. 260-68, 976. Accordingly, I conclude the ALJ cited specific and legitimate reasons to discount Dr. Schwartz's opinion.

### C.   Dr. Angeles

Dr. Angeles evaluated Plaintiff for treatment purposes in relation to his neck and back pain. Tr. 1172. After exam, Dr. Angeles opined Plaintiff "mainly has axial neck pain with left upper extremity radiculopathy," and reported Plaintiff's "pain is to the point that he is unable to obtain work or perform daily household activities." Tr. 1175. As to the duration of the symptoms, Dr. Angeles reported that Plaintiff's "neck and thoracic pain have been occurring for 7 years now." Tr. 1172. Dr. Angeles noted Plaintiff's cervical spine MRI dated March 7, 2011, demonstrated "multilevel spondylosis and disc degeneration." Tr. 1175.

The ALJ rejected Dr. Angeles's opinion because it "appears to be a recitation of the claimant's subjective complaints rather than an opinion regarding functional limitations." Tr. 21. Indeed, Dr. Angeles did not opine on Plaintiff's functional limitations or the severity of Plaintiff's back impairments in any detail aside from her statement that Plaintiff's pain precludes him from obtaining work and daily household activities. Tr. 1175. In this respect, the ALJ is correct that Dr. Angeles's opinion appears to have been based on Plaintiff's discredited subjective reporting. Notably,

21 - OPINION AND ORDER

the report that Plaintiff is precluded from performance of daily household activities is inconsistent with several reports discussed by the ALJ throughout the record, including reports that Plaintiff's pain was "improved" or "well-controlled," notes mentioning Plaintiff raking for "several hours," carrying a transmission, and "moving furniture boxes around." Tr. 423, 923, 938, 1147, 1187. Accordingly, reliance on Plaintiff's subjective symptom reporting is a compelling reason to reject Dr. Angeles's opinion. The ALJ did not err in weighing Dr. Angeles's testimony.

### D.   Dr. Workman

Finally, Plaintiff argues that the Commissioner's failure to discuss Dr. Workman's opinion deprives the ALJ's decision of substantial evidence. Dr. Workman's opinion was submitted to the Appeals Council after the ALJ issued his decision. Tr. 4, 1181. When evidence is submitted for the first time to — and considered by — the Appeals Council, the court asks "whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence." Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).

In her opinion, Dr. Workman noted Plaintiff was being treated for "chronic neck pain, neuropathic pain, and fibromyalgia." Tr. 1181. Dr. Workman opined Plaintiff "is currently debilitated by these conditions and is seeking to further his education doing studies four days a week." Tr. 1181. As a result, Dr. Workman

wrote "it is thus my recommendation that during the time that he is studying, due to his debilitating pain from the above conditions, that he refrain from other physical activity, which may be work related and cause progression of his symptoms." Tr. 1181.

Viewing the record as a whole, I conclude Dr. Workman's opinion does not deprive the ALJ's decision of substantial evidence. As noted, the ALJ's finding that Plaintiff's pain symptoms were not as severe as alleged is supported by considerable evidence in the record. In addition, aside from reporting that Plaintiff is limited by pain, Dr. Workman's opinion does not ascribe any functional limitations. Finally, Dr. Workman's opinion only speaks to Plaintiff's ability to work while in school four days per week, a standard of disability that differs considerably from that which the Commissioner applies. Thus, Dr. Workman's opinion does not necessitate remand to the Commissioner for further proceedings.

In sum, I conclude the ALJ cited sufficient reasons to discredit to varying degrees the opinions of Drs. Pelz, Choi, Curtin, Schwartz, and Angeles. In addition, I find Dr. Workman's opinion does not deprive the ALJ's decision of the support of substantial evidence. The ALJ appropriately weighed the medical testimony and permissibly incorporated the functional limitations contained therein into the RFC.

///

23 – OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this _28_ day of October, 2014.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge